No. 19-2432

In the
# United States Court of Appeals
for the Eighth Circuit

———————————

DANIEL LEWIS LEE,
Appellant,

v.

UNITED STATES OF AMERICA,
Appellee.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
District Court No. 4:18-CV-00649

———————————

**BRIEF FOR THE UNITED STATES IN OPPOSITION TO LEE'S
APPLICATION FOR A CERTIFICATE OF APPEALABILITY**

———————————

CODY HILAND
United States Attorney
Eastern District of Arkansas

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW S. MINER
Deputy Assistant Attorney General

JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION ......................................................................... 1

STATEMENT............................................................................. 2

    I.    Offense Conduct................................................... 3

    II.   Trial and Sentencing ............................................ 4

        A.    Guilt Phase ...................................... 5

        B.    Penalty Phase ................................... 6

    III.  Postconviction Proceedings.................................. 8

    IV.  The Present § 2255 Motion.................................. 9

ARGUMENT .......................................................................... 12

        A.    Standard for a Certificate of Appealability ...................... 12

        B.    No Reasonable Jurist Would Disagree That Lee's Motion Was An Uncertified Second or Successive § 2255 Motion .................................................. 13

        C.    No Reasonable Jurist Would Grant Lee's Request for Relief Under Rule 60(b)(3) ......................................... 20

        D.    No Reasonable Jurist Would Grant Lee's Request for Relief Under Rule 60(d)(3) ......................................... 24

CONCLUSION........................................................................ 25

CERTIFICATE OF SERVICE ................................................. 26

Appellate Case: 19-2432   Page: 2   Date Filed: 10/07/2019 Entry ID: 4838752

# INTRODUCTION

This is a capital murder case with a long history. Defendant Daniel Lewis Lee has obtained extensive review of his conviction and sentence by both this Court and the district court. Among other things, he collaterally attacked his conviction and sentence on numerous grounds in a motion for relief under 28 U.S.C. § 2255, the district court carefully evaluated and denied the motion in an exhaustive opinion, and this Court affirmed. Now, in order to obtain collateral review of his conviction or sentence again in another motion for relief under § 2255, Lee must obtain certification from this Court that the motion contains newly discovered evidence that provides compelling proof of his innocence or a new rule of constitutional law that the Supreme Court has made retroactive on collateral review. Lee did not obtain such precertification to file the § 2255 motion at issue in this case and does not contend that he would be able to obtain precertification if he were to try.

The district court correctly denied Lee's motion on that basis, and no reasonable jurist could disagree. The district court also correctly denied the motion insofar as Lee attempted to characterize it as a motion for relief from judgment under Federal Rules of Civil Procedure 60(b)(3) and 60(d)(3). Lee is not entitled to a certificate of appealability.

1

Appellate Case: 19-2432     Page: 3     Date Filed: 10/07/2019 Entry ID: 4838752

## STATEMENT

In 1999, a federal jury found Lee guilty of committing three capital murders and recommended that Lee receive the death penalty. After the district court (Hon. G. Thomas Eisele) granted Lee's post-trial motion for a new sentencing hearing, *United States v. Lee*, 89 F. Supp. 2d 1017 (E.D. Ark. 2000), the government appealed, and this Court reversed and reinstated the death sentence, *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001), *cert. denied*, 537 U.S. 1000 (2002). This Court subsequently affirmed Lee's conviction and sentence on direct appeal. *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004), *cert. denied*, 545 U.S. 1141 (2005).

Lee then filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Dkt. 1118.[1] The district court denied the motion and a motion for reconsideration. *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315 (E.D. Ark. Aug. 28, 2008); *United States v. Lee*, No. 97-CR-243, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010). This Court affirmed. *United States v. Lee*, 715 F.3d 215 (8th Cir. 2013), *cert. denied*, 135 S. Ct. 72 (2014).

In September 2013, Lee filed a motion purporting to seek relief from judgment under Federal Rule of Civil Procedure 60. Dkt. 1230. The district

---

[1] "Dkt." refers to district court docket entries. "Tr." refers to the consecutively-paginated trial transcript.

Appellate Case: 19-2432    Page: 4    Date Filed: 10/07/2019 Entry ID: 4838752

court concluded that it lacked jurisdiction because the motion in substance amounted to an uncertified second or successive motion for relief under § 2255. *United States v. Lee*, No. 97-CR-243, 2014 WL 1093197 (E.D. Ark. Mar. 18, 2014). This Court affirmed. *United States v. Lee*, 792 F.3d 1021 (8th Cir. 2015), *cert. denied*, 137 S. Ct. 1577 (2017).

In September 2018, Lee filed another motion for collateral relief under § 2255. Dkt. 1297. He claimed that his constitutional rights were violated because the government allegedly failed to disclose evidence that was relevant to his guilt and sentence. *Id.* at 3-6. The district court denied the motion and did not issue a certificate of appealability. Dkt. 1313, at 20. The court also denied a motion for reconsideration. Dkt. 1318. Lee applied to this Court for a certificate of appealability, and the Court ordered this response by the government.[2]

## I.    Offense Conduct

Lee and Chevie Kehoe were members of a white supremacist organization known as the Aryan Peoples' Republic, or the Aryan Peoples'

---

[2] In the meantime, Lee filed a habeas petition under 28 U.S.C. § 2241 in the United States District Court for the Southern District of Indiana, the district within which he is confined, seeking to raise (among other things) one of the same claims he attempts to raise in the present § 2255 motion. *See Lee v. Warden*, No. 2:19-CV-469, Docket Entry 1 (S.D. Ind. Sept. 26, 2019).

Resistance (APR), which Kehoe founded for the purpose of establishing an independent nation of white supremacists in the Pacific Northwest. *Lee*, 374 F.3d at 641. In January 1996, expecting to find valuable property, Kehoe and Lee traveled from Washington to the Arkansas home of William Mueller, a gun dealer who owned a large collection of weapons and ammunition. *Id.* When Mueller arrived home with his wife Nancy and their eight-year-old daughter Sarah Powell, Lee and Kehoe overpowered and incapacitated the Muellers and then questioned Sarah Powell about the location of cash, guns, and ammunition. *Id.* at 641-42. After taking weapons worth about $30,000 and $50,000 in cash and coins, Lee and Kehoe shot the three victims with a stun gun, placed plastic trash bags over their heads, and sealed the bags with duct tape to asphyxiate them. *Lee*, 2008 WL 4079315, at *4. Kehoe and Lee taped rocks to the three victims and threw them into the nearby Illinois Bayou. *Lee*, 374 F.3d at 641-42; *United States v. Kehoe*, 310 F.3d 579, 590 (8th Cir. 2002), *cert. denied*, 538 U.S. 1048 (2003).

## II.    Trial and Sentencing

Lee and Kehoe were charged with conducting the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c); conspiring to conduct the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d); and three capital

4

counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1).

The government provided notice of its intent to seek the death penalty against

both defendants for each of the three murders. *See Lee*, 374 F.3d at 642.

**A.     Guilt Phase**

Lee and Kehoe were tried together before a jury. *See Lee*, 2008 WL

4079315, at *2. After a two-month trial, the jury found Lee and Kehoe guilty

on all counts. *Id.*

To prove that Lee and Kehoe committed the murders, the government

introduced evidence showing, among other things, that Lee and Kehoe left

Washington State in January 1996, *see, e.g.*, Tr. 2772-73; traveled through

Oklahoma and left on January 10, 1996, the day before the Muellers were

murdered, Tr. 2618-20, 2633; and returned back to Washington three or four

days later, flush with cash and in possession of property owned by the

Muellers, Tr. 2610, 2620-22, 2896, 2900-01, 2916, 3710. Kehoe and Lee both

separately confessed in detail to Kehoe's mother, Gloria: Both men admitted

that they killed the Muellers, and Kehoe said that he killed Sarah Powell

because Lee was unwilling to kill the 8-year-old girl. Tr. 4971-75. Lee also told

James and Dalvine Wanker—his neighbors in Washington—that he had gone

"down south" and "taken care" of people down there, or, more specifically,

had "wrapped them up, taped them, and [thrown] them in the swamp." Tr.

5

Appellate Case: 19-2432     Page: 7     Date Filed: 10/07/2019 Entry ID: 4838752

4082-83, 4093. Lee and Kehoe both fled Washington after they learned that law enforcement authorities were asking questions that linked Kehoe with property stolen from the Muellers. Tr. 2794, 2799, 4980. Chevie Kehoe subsequently gave another detailed confession to his brother Cheyne. Tr. 5326-31; *see Kehoe*, 310 F.3d 584-85. And when investigators retrieved property that had been stolen from the Muellers in a storage unit used by Chevie Kehoe, Lee's fingerprints were found on one of Mueller's stolen display cases. Tr. 3380-3403, 3610-28, 3650, 3710; *see Kehoe*, 310 F.3d at 592.

### B. Penalty Phase

After the guilt phase, separate hearings were held to determine whether each defendant should receive the death penalty for the three capital murders. *See* Tr. 7169-7337 (Kehoe sentencing hearing); Tr. 7367-8022 (Lee sentencing hearing). The Federal Death Penalty Act, 18 U.S.C. §§ 3591-3593, required the jury to determine, at each hearing, whether aggravating factors proved by the government sufficiently outweighed any mitigating factors proved by the defendants to justify the death penalty. *See generally United States v. Purkey*, 428 F.3d 738, 749, 761 (8th Cir. 2005). At both hearings, the government argued that five aggravating factors supported imposition of the death penalty: (1) Lee and Kehoe murdered the Muellers in expectation of receiving something of pecuniary value, (2) they murdered the Muellers after substantial planning and

6

premeditation, (3) Sarah Powell was a vulnerable victim, (4) they killed or attempted to kill more than one person during a single criminal episode, and (5) they would be a danger in the future to the lives and safety of others. *See* Tr. 7175, 7373; *see* 18 U.S.C. § 3592(c).

At Kehoe's sentencing hearing, which took place first, the jury unanimously decided against a sentence of death for each of the three murders and in favor of life imprisonment without the possibility of release. Tr. 7328-37. The United States then proceeded with Lee's sentencing hearing. *See In re United States*, 197 F.3d 310, 311-12 (8th Cir. 1999).

The emphasis of the government's case at Lee's sentencing hearing was the aggravating factor of his future dangerousness. *See* Tr. 7379-84. The government introduced evidence showing that in 1990 Lee severely beat an individual named Joey Wavra, forced Wavra down a manhole into a storm sewer, and retrieved a knife for his cousin, who repeatedly stabbed Wavra and slit his throat. Tr. 7394-96, 7401-07, 7412-15, 7441-46. The government also introduced the testimony of a prison guard who stated that Lee screamed and yelled and threatened to kill her after she told Lee he could not leave his cell to call his lawyer. Tr. 7462-67. The government argued that this evidence, and the evidence of Lee's offense conduct introduced during the guilt phase of the

7

Appellate Case: 19-2432   Page: 9   Date Filed: 10/07/2019 Entry ID: 4838752

trial, showed that Lee was violent and volatile and would present a danger to others in the future. Tr. 7381, 7956-75.

Lee claimed 14 mitigating factors. *See* Tr. 7373-75. The emphasis of the defense presentation, however, was that Lee suffered from mental impairment due to his troubled upbringing. *See, e.g.*, Tr. 7385-88.

The jury concluded that the evidence established all of the aggravating factors alleged by the government except for one, *i.e.*, that Lee committed the murders after substantial planning and premeditation. Tr. 8017, 8020. The jury largely rejected Lee's mitigation case, with one or more of the jurors finding the existence of only five of the 14 mitigating factors claimed by Lee. Tr. 8017-19. The jurors unanimously rejected the contention that Lee had a mental impairment that should weigh against application of the death penalty. Tr. 8018-19. After weighing the aggravating and mitigating factors, the jury unanimously decided to impose a sentence of death for each of the three murder charges. Tr. 8019-22.

## III. Postconviction Proceedings

After this Court affirmed Lee's conviction and sentence on direct appeal, *see Lee*, 374 F.3d at 641, Lee moved for collateral relief under 28 U.S.C. § 2255, raising a multitude of claims, *see* Dkt. 1118, 1139, 1161. The district court

Appellate Case: 19-2432    Page: 10    Date Filed: 10/07/2019 Entry ID: 4838752

denied the motion in a 119-page opinion, *see* Dkt. 1163 and *Lee*, 2008 WL 4079315, at \*1, and this Court affirmed, *Lee*, 715 F.3d at 217.

Lee subsequently filed a motion for relief from judgment under Federal Rule of Civil Procedure 60, asserting a claim that he received ineffective assistance of counsel at sentencing. Dkt. 1230, at 30-48. The district court determined that the motion—although denominated a motion for relief under Rule 60—in fact amounted to a second or successive motion under § 2255. *Lee*, 2014 WL 1093197, at \*4-\*6. The court therefore concluded that it lacked jurisdiction over Lee's second or successive motion because this Court had not, as required by 28 U.S.C. § 2255(h), certified that the motion involved either newly discovered evidence demonstrating Lee's innocence or a new rule of constitutional law that the Supreme Court had made retroactive on collateral review. *Id.* This Court affirmed. *Lee*, 792 F.3d at 1025.

## IV.  The Present § 2255 Motion

In September 2018, Lee filed the present § 2255 motion raising new claims of alleged constitutional error at his trial. Dkt. 1297. Lee argued that the government suppressed favorable evidence at the guilt and penalty phases of the trial, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Dkt. 1297, at 30-48, 52-59. He also asserted that this allegedly suppressed evidence establishes that the government introduced false or misleading evidence at trial, in

9

violation of *Giglio v. United States*, 405 U.S. 150 (1972), and *Napue v. Illinois*, 360 U.S. 264 (1959). Dkt. 1297, at 48-52, 59-61.[3]

The evidence that Lee argued was suppressed fell into two categories. First, Lee asserted that the government failed to disclose statements that James Wanker told investigators before he testified at Lee's trial. *See, e.g.*, Dkt. 1297, at 3-4. Second, Lee claimed that the government failed to disclose a document from the Oklahoma state case arising from Lee's involvement in the murder of Joey Wavra. *See, e.g.*, *id.* at 6.

Lee argued that his motion was not a "second or successive" § 2255 motion and therefore did not require certification from this Court pursuant to 28 U.S.C. § 2255(h). Dkt. 1297, at 23-29. According to Lee, a § 2255 motion that raises a *Brady* claim based on evidence discovered after the denial of a prior § 2255 motion is not second or successive if the motion asserts that the government suppressed "*material* exculpatory evidence." *Id.* at 23.

Lee also asserted, in the alternative, that if even if his *Brady* claims were subject to the gatekeeping provisions of § 2255(h), he was nonetheless entitled to relief from judgment under Federal Rule of Civil Procedure 60. Dkt. 1297, at 62. He claimed that relief was warranted as a result of "fraud,"

---

[3] Lee refers to these claims collectively as his "*Brady* claims." *See, e.g.*, Lee Br. 6. This brief follows the same practice.

Appellate Case: 19-2432    Page: 12    Date Filed: 10/07/2019 Entry ID: 4838752

"misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P.
60(b)(3), or as a result of "fraud on the court," Fed. R. Civ. P. 60(d)(3); *see* Dkt.
1297, at 62-64.

The district court denied the motion. Dkt. 1313. The court concluded
that Lee was required to obtain certification from this Court in order to file a
§ 2255 motion raising the *Brady* claims. *Id.* at 14-17. The court also determined
that "[a]ssuming that Lee has properly asserted a Rule 60 motion as opposed
to a second or successive habeas petition, he is not entitled to relief under
either Rule 60(b)(3) or (d)(3)." *Id.* at 18. With respect to Lee's motion for relief
under Rule 60(b)(3), the court concluded that it was untimely because it was
filed outside the one-year limitation period for such motions. *Id.* at 18-19. The
court also concluded that even assuming the motion was timely, it lacked merit
because Lee failed to demonstrate the "exceptional circumstances" required for
relief under Rule 60(b)(3). *Id.* at 19. And as for Lee's request for relief under
Rule 60(d)(3), the court determined that Lee's allegations did not clear the
"high bar" for alleging fraud on the court. *Id.* at 19-20.

Lee filed a motion for reconsideration under Fed. R. Civ. P. 59(e). Dkt.
1317. The district court denied the motion, concluding that "[t]he substance of
Lee's . . . arguments is mostly the same as the arguments that he made in his

11

motion to vacate" and "[h]e has provided no convincing argument to alter or amend the Court's Order." Dkt. 1318, at 2.

## ARGUMENT

Lee seeks a certificate of appealability on three issues, arguing that the district court erred in denying (1) his § 2255 motion, (2) his motion for relief under Rule 60(b)(3), and (3) his motion for relief under Rule 60(d)(3). The district court's ruling was correct, however, and no reasonable jurist could disagree. Lee is not entitled to a certificate of appealability.

### A.    Standard for a Certificate of Appealability

An appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255 unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate of appealability must "indicate which specific issue or issues satisfy" that showing, 28 U.S.C. § 2253(c)(3). To make a substantial showing of the denial of a constitutional right, an applicant must establish that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see Clay*

12

*v. Bowersox*, 628 F.3d 996, 998 (8th Cir. 2011) (per curiam) (denying certificate of appealability).

**B.     No Reasonable Jurist Would Disagree That Lee's Motion Was An Uncertified Second or Successive § 2255 Motion**

A federal prisoner may collaterally attack his conviction by filing a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *See generally United States v. Hayman*, 342 U.S. 205, 212-19 (1952) (explaining history of § 2255). Before 1996, statutory and judge-made rules—including the abuse-of-the-writ doctrine—placed limits on the filing of repetitive § 2255 motions. *See Baranski v. United States*, 880 F.3d 951, 955 (8th Cir. 2018). In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, § 105, 110 Stat. 1214, 1220, which "imposed stricter limitations on the filing of second and successive § 2255 motions." *Baranski*, 880 F.3d at 955; *see Crawford v. Minnesota*, 698 F.3d 1086, 1089 (8th Cir. 2012) (explaining that the AEDPA "codified 'some of the pre-existing limits on successive petitions' and imposed additional restrictions on habeas relief") (quoting *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

The AEDPA provides that a "second or successive" § 2255 motion must be certified by the court of appeals to contain:

> (1)     newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no

13

> reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). These gatekeeping requirements for second or successive § 2255 motions are jurisdictional. *See, e.g.*, *United States v. Springer*, 875 F.3d 968, 982 (10th Cir. 2017).[4]

The district court correctly concluded that Lee's § 2255 motion raising *Brady* claims was "second or successive" and therefore he was required to obtain certification from this Court under § 2255(h) before filing his motion. *See* Dkt. 1313, at 10-17. Although the phrase "second or successive" in § 2255(h) "does not encompass all applications 'filed second or successively in time,'" *Crawford*, 698 F.3d at 1089 (quoting *Panetti v. Quarterman*, 551 U.S. 930, 943-44 (2007)), "unanimous authority from the circuits that have decided the

---

[4] The AEDPA established similar gatekeeping requirements for state prisoners challenging their convictions in federal habeas petitions under 28 U.S.C. § 2254, and "courts do not distinguish between [§ 2254 and § 2255] for purposes of the second-or-successive determination." *Storey v. Vasbinder*, 657 F.3d 372, 377 (6th Cir. 2011). We therefore cite § 2255 and § 2254 cases interchangeably. *See Murray v. Greiner*, 394 F.3d 78, 81 (2d Cir. 2005) ("The federal habeas statute makes no material distinction between petitions under § 2254 and § 2255 in defining a 'second or successive' petition.").

14

issue" holds that a second-in-time § 2255 motion or habeas petition asserting a *Brady* violation based on newly discovered evidence is second or successive and must satisfy the AEDPA's gatekeeping provisions, Dkt. 1313, at 16.[5]

The "plain language" of § 2255 compels this conclusion. Dkt. 1313, at 16. As the district court explained, § 2255 "expressly provides for cases in which newly discovered evidence is raised in a second or successive application." Dkt. 1313, at 16; *see Brown v. Muniz*, 889 F.3d 661, 666-75 (9th Cir. 2018) (explaining that "§ 2255 addresses this precise scenario"). Specifically, the statute permits a defendant to file a second or successive § 2255 motion based on newly discovered evidence if he can show that the evidence, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. §

---

[5] *Blackman v. Davis*, 909 F.3d 772, 778-79 (5th Cir. 2018); *In re Wogenstahl*, 902 F.3d 621, 626-28 (6th Cir. 2018); *Brown v. Muniz*, 889 F.3d 661, 666-75 (9th Cir. 2018); *In re Pickard*, 681 F.3d 1201, 1205 (10th Cir. 2012); *Quezada v. Smith*, 624 F.3d 514, 522 (2d Cir. 2010); *Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1259-60 (11th Cir. 2009); *Evans v. Smith*, 220 F.3d 306, 322-25 (4th Cir. 2000). In *Scott v. United States*, 890 F.3d 1239 (11th Cir. 2018), a panel of the Eleventh Circuit urged the entire en banc court to reconsider its previous ruling in *Tompkins*, but when the defendant filed a petition for rehearing en banc, the court summarily denied it with no judge on the court requesting the court to be polled. *Scott v. United States*, Nos. 15-1137, 16-11950 (11th Cir. Aug. 16, 2018).

Appellate Case: 19-2432     Page: 17     Date Filed: 10/07/2019 Entry ID: 4838752

2255(h)(1). As the district court correctly recognized, "[t]he statute does not except *Brady*." Dkt. 1313, at 16.

Accordingly, under the plain language of § 2255, a defendant seeking to raise a *Brady* claim in a second-in-time § 2255 motion based on newly discovered evidence may do so, but only if he can demonstrate to the court of appeals that the evidence, if accepted as true, provides compelling proof of his innocence. *See, e.g.*, *In re Wogenstahl*, 902 F.3d 621, 626-28 (6th Cir. 2018). It is not enough to show merely that there is a reasonable probability that the evidence would have changed the outcome of the trial, which is the less onerous standard for materiality under *Brady*. *See, e.g.*, *United States v. Anwar*, 880 F.3d 958, 969 (8th Cir. 2018) (describing *Brady* standard).

In other words, § 2255(h) "does not bar all newly discovered, second-in-time *Brady* claims," it merely limits the *Brady* claims permitted in a second or succession § 2255 motion to those that "prove by clear and convincing evidence a prisoner's innocence." *United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011). To exempt a second-in-time motion raising a *Brady* claim from these gatekeeping requirements of § 2255(h) "would thwart the statutory scheme and render Congress' limitations on second or successive petitions a nullity in a wide range of cases." *Evans v. Smith*, 220 F.3d 306, 324 (4th Cir. 2000); *see Muniz*, 889 F.3d at 671 (explaining that applying the gatekeeping

16

requirements to a motion asserting a *Brady* claim advances Congress's purposes in enacting the AEDPA).

Despite this plain language and the unanimity amongst the courts of appeals, Lee nonetheless contends that a two-page, unpublished order by the district judge in *Carter v. Kelley*, 5:16-CV-367 (E.D. Ark.), demonstrates that reasonable jurists could disagree with the district court's ruling. *See* App. 14-15. He is wrong.[6]

That case takes the same approach as the courts in *United States v. Lopez*, 577 F.3d 1053 (9th Cir. 2009), and *Crawford v. Minnesota*, 698 F.3d 1086 (8th Cir. 2012). In *Lopez*, the Ninth Circuit expressly found it unnecessary to decide the issue presented here, *i.e.*, whether a second-in-time § 2255 motion asserting a *Brady* claim is necessarily "second or successive" and subject to the AEDPA's gatekeeping provisions. 577 F.3d at 1067, 1068. The court instead

---

[6] We note that Lee has taken a different position in a habeas petition he filed recently in the Southern District of Indiana in which he raises the same *Brady* claim based on the Oklahoma court document in the Wavra case. In his habeas petition, Lee acknowledges that "the only mechanism for obtaining § 2255 review of his *Brady* and *Napue* claims [is] by way of a second or successive motion pursuant to §§ 2255(h)(1) or (2)," and "[u]nder § 2255(h)(1), such a motion must contain 'newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense.'" *Lee v. Warden*, No. 2:19-CV-469, Docket Entry 1, at 60 (S.D. Ind. Sept. 26, 2019) (emphasis omitted).

17

concluded that because the AEDPA, at a minimum, prohibits motions that would have been barred under the pre-AEDPA abuse-of-the-writ standards, and because the defendant's motion would have been deemed abusive pre-AEDPA—because it asserted the suppression of evidence that did not qualify as material under *Brady*—the motion necessarily was also barred under the AEDPA. *Id.* at 1063-68. This Court followed a similar approach in *Crawford*, noting that "some courts have concluded that all *Brady* claims in second habeas petitions are second or successive regardless of their materiality," but concluding that this "question [was] not presented here because in this case" the defendant asserted the suppression of non-material evidence and therefore his second-in-time petition was unquestionably barred both pre- and post-AEDPA. 698 F.3d at 1090.

Citing *Lopez* and *Crawford*, the district judge in *Carter v. Kelley* concluded that the defendant's habeas petition was necessarily second or successive and required precertification because it asserted a *Brady* claim based on nonmaterial evidence. App. 14-15; *Carter v. Kelley*, No. 5:16-CV-367, 2017 WL 4214084, at *1 (E.D. Ark. Sept. 21, 2017). The court did not address, however, whether it could entertain a habeas petition asserting a *Brady* claim based on material evidence without precertification from the court of appeals.

Appellate Case: 19-2432    Page: 20    Date Filed: 10/07/2019 Entry ID: 4838752

None of these cases assists Lee. As noted, the courts of appeals that have actually decided the question expressly left open in *Lopez* and *Crawford* have all concluded that a second-in-time § 2255 motion or habeas petition asserting that the government unlawfully suppressed evidence at trial, in violation of *Brady*, is a second or successive application that must comport with the AEDPA's gatekeeping provisions. In fact, the Ninth Circuit itself, subsequent to *Lopez*, expressly reached this conclusion. *Muniz*, 889 F.3d at 666-73. The court explained that the distinction drawn in *Lopez* "between material and immaterial *Brady* claims derives from the pre-AEDPA abuse-of-the-writ doctrine," but "[w]hile AEDPA's provisions are inspired by and borrow heavily from that judicially-developed rule," courts "are bound by AEDPA itself, not the judicial standard it superseded." *Id.* at 673. The AEDPA "makes no distinction based on the materiality of predicate facts," the court explained, and is only concerned "with the existence of those facts at the time of the initial" application for collateral relief. *Id.* (emphasis omitted).

19

Appellate Case: 19-2432     Page: 21     Date Filed: 10/07/2019 Entry ID: 4838752

In short, Lee had to obtain precertification under § 2255(h) before filing the § 2255 motion raising the *Brady* claims. Because he did not (and cannot) do so, the district court lacked jurisdiction. No reasonable jurist would disagree.[7]

**C.     No Reasonable Jurist Would Grant Lee's Request for Relief Under Rule 60(b)(3)**

The district court correctly concluded that even assuming Lee's motion could be considered a motion for relief under Fed. R. Civ. P. 60(b)(3), it had to be denied for two separate reasons. Lee failed to allege facts sufficient to show he was entitled to relief under Rule 60(b)(3), Dkt. 1313, at 19, and the motion was untimely, Dkt. 1313, at 18-19. No reasonable jurists would disagree with the district court's ruling.

---

[7] Because the district court correctly denied Lee's motion on the ground that Lee failed to obtain precertification, the merits of Lee's *Brady* claims are not pertinent. We nonetheless briefly note that the claims lack merit for a number of reasons. For example, the *Brady* claim regarding statements by Wanker is without merit because, as the district court correctly concluded, those statements are not material under *Brady*. *See* Dkt. 1313, at 13-14. Although the district court concluded that the document from the Oklahoma court case pertaining to the murder of Joey Wavra was material under *Brady*, *see* Dkt. 1313, at 14, the government disagrees with that conclusion. But in any event, even assuming the document was material, the document was "public information," Dkt. 1313, at 19, and therefore could not have been suppressed by the government as required by *Brady*, *see, e.g.*, *United States v. Barraza Cazares*, 465 F.3d 327, 334 (8th Cir. 2006) (explaining that *Brady* only covers material that the government fails to disclose and that is "otherwise unavailable to the defendant"); *United States v. Shields*, 789 F.3d 733, 747 (7th Cir. 2015) (concluding that a publicly available document did not qualify as *Brady* material).

20

1. A movant seeking relief from judgment under Rule 60(b)(3) must "show, with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case." *Atkinson v. Prudential Property Co., Inc.*, 43 F.3d 367, 372-73 (8th Cir. 1994). Although the "failure to produce evidence requested in discovery may under some circumstances be grounds for vacating judgment," the movant must submit "evidence that the failure to do so . . . was due to misconduct on the part of" the opposing party. *Id.* at 373. A movant is not prevented from fully and fairly presenting its case if the evidence the opposing party purportedly fails to turn over is nonetheless available to the movant. *Id.*

The district court correctly applied these principles and concluded that Lee had "not alleged facts to show that the omission of any evidence during his § 2255 proceeding was due to the Government's misconduct or that the Government intentionally misrepresented any facts." Dkt. 1313, at 19. The only "evidence" that Lee identifies as purportedly showing misconduct by the government during the proceedings on Lee's first § 2255 motion is a footnote in the government's response to Lee's motion. In that footnote—in response to Lee's claim that his lawyers were ineffective for failing to object to a court order preventing Lee (but not his lawyers) from accessing copies of discovery—the government noted that prior to trial it had turned over "[a]

21

huge amount of 'discovery' materials," some of which was *Brady* material. Dkt. 1126, at 45 n.16. This statement was not false or misleading and could not possibly provide clear and convincing evidence to the contrary. Insofar as Lee suggests this footnote responded to the claim in his § 2255 motion that the government committed *Brady* violations at trial, Lee takes the footnote out of context and misconstrues its meaning. *See* Dkt. 1313, at 18. No reasonable jurist could find that Lee sufficiently alleged facts showing that the government engaged in the type of misconduct cognizable under Rule 60(b)(3).

2.       The district court also correctly concluded that Lee's motion was untimely insofar as he sought relief under Fed. R. Civ. P. 60(b)(3). A motion for relief under Rule 60(b)(3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Lee's motion—filed in 2018, well more than a year after the district court entered judgment in 2008 denying Lee's § 2255 motion—was therefore untimely. *See* 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2866 (3d ed. 2018) ("The one-year limit on motions under the first three clauses runs from the date the judgment was entered in the district court.").

Lee contends that the district court should have equitably tolled the one-year period. A Rule 60(b)(3) motion, however, "must be denied as untimely if made more than one year after judgment *regardless of whether the delay was*

22

*reasonable.*" Wright et al., *supra*, § 2866 (emphasis added). And a district court "*must not* extend" this one-year limitation. Fed. R. Civ. P. 6(b)(2) (emphasis added). A court does not "have any power to enlarge the time limits of the rule." Wright et al., *supra*, § 2866.

Lee does not identify any case in which a court equitably tolled the one-year period for filing a motion under Rule 60(b). He cites a decision in which a bankruptcy judge merely suggests that the one-year limitation for filing motions under Rule 60(b)(3) may be equitable tolled. *See In re Benjamin's-Arnolds, Inc.*, 1997 WL 86463, *10 n.9 & *11 n.10 (Bankr. D. Minn. Feb. 28, 1997). The court in that case, however, did not equitably toll the one-year limitation period, and other courts have expressly rejected equitable tolling of the one-year period in Rule 60(b). *See, e.g.*, *Mills v. Noonan*, No. 1:06-CV-00842, 2019 WL 2361483, at *1 (W.D.N.Y. June 4, 2019) (concluding that the movant had "cite[d] no authority for the proposition that 'equitable estoppel' or 'equitable tolling' is available with regard to a motion pursuant to" Rule 60(b)(3)); *see also In re Lothian Oil, Inc.*, 508 Fed. Appx. 352, 357 (5th Cir. 2013) (unpublished) ("It would make little sense to toll the limitations period of rules designed to deal with fraud because fraud was present."). Moreover, even if equitable tolling were available, Lee—who filed his motion 10 years after entry of judgment—provides no basis to conclude he could satisfy the diligence

23

requirement that would warrant tolling in the first place. *See, e.g.*, *Burks v. Kelley*, 881 F.3d 663, 666 (8th Cir. 2018) (rejecting equitable tolling of a habeas petition where the petitioner failed to pursue his rights diligently). No reasonable jurist could disagree that the one-year limitation period precluded Lee from filing a motion for relief from judgment under Rule 60(b)(3).

**D. No Reasonable Jurist Would Grant Lee's Request for Relief Under Rule 60(d)(3)**

Relief from judgment under Fed. R. Civ. P. 60(d)(3) for fraud on the court "is a truly extraordinary form of relief." *Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 878 (8th Cir. 2010). "A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel." *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998) (citation omitted). "[I]t is necessary to show a deliberately planned scheme designed to improperly influence the court in its decision." *Heim v. Comm'r of Internal Revenue*, 872 F.2d 245, 249 (8th Cir. 1989). And the movant must demonstrate fraud "by clear and convincing evidence." *Greiner*, 152 F.3d at 789.

The district court correctly concluded that "Lee's allegations do not clear this high bar." Dkt. 1313, at 20. Lee does not come close to alleging that the government engaged in deliberate, intentional misconduct directed toward the

24

court in the § 2255 proceedings, let alone support such allegations with clear and convincing evidence. No reasonable jurist could conclude otherwise.

## CONCLUSION

The Court should reject Lee's application for a certificate of appealability.

Respectfully submitted,

CODY HILAND
United States Attorney
Eastern District of Arkansas

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW S. MINER
Deputy Assistant Attorney General

/s/ John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

October 7, 2019

25

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on October 7, 2019. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766

Appellate Case: 19-2432    Page: 28    Date Filed: 10/07/2019 Entry ID: 4838752