# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

———————————————————————————

## No. 19-2432

———————————————————————————

## DANIEL LEWIS LEE,
Appellant,

v.

## UNITED STATES,
Appellee.

———————————————————————————

On Appeal from the United States District Court
Eastern District of Arkansas
No. 4:18-CV-00649-JLH; 4:97-cr-00243-KGB-2

———————————————————————————

## REPLY TO GOVERNMENT'S RESPONSE TO
## APPLICATION FOR CERTIFICATE OF APPEALABILITY

———————————————————————————

MORRIS H. MOON
Bar# 24032750 (TX)
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(713) 880-3556
Morris_Moon@fd.org

GEORGE G. KOUROS
Bar # 420813 (CT)
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 821-0855
George_Kouros@fd.org

Counsel for Appellant Daniel Lewis Lee

Dated: October 21, 2019

# Table of Contents

Introduction…………………………….......................................................1

I.      There is an ongoing debate among jurists of reason about whether a material *Brady* claim requires preauthorization. …………………………4

II.     The Government has effectively conceded that reasonable jurists could disagree whether his *Brady* claims are material…………………….....9

III.    The Government's consistent failure to produce requested *Brady* materials in its possession constitutes "misrepresentation" and "misconduct" under Rule 60(b)(3)…………………………………………………………12

        A.    Mr. Lee was prevented from fully and fairly litigating his initial § 2255 motion because he reasonably relied on the Government's repeated representations that it had disclosed all *Brady* evidence in its possession.………………………………………………………...12

        B.    The Government's response to the equitable tolling issue establishes the need for a remand.…………………….......................................17

IV.   Reasonable jurists could disagree whether the Government's sustained pattern of misconduct establishes "fraud on the court" under Rule 60(d)(3)………………………………….......................................20

Conclusion………………………………………………………………...23

Certificate of Service…………………………………………………...24

i

## Introduction

The Government opens its response with a lament about the "long history" of this case and a detailed recitation of prior proceedings. GR at 1.[1] The subtext here is not exactly subtle: "Mr. Lee has had his day in court, let's not waste any more time on him."

But there is a conspicuous problem with the Government's narrative about the "extensive review" that has supposedly been afforded to Mr. Lee, particularly given the claims at issue here. The Government committed *Brady* and *Napue* violations to wrongfully secure Mr. Lee's conviction. And because it succeeded in concealing these constitutional violations for so long—including during the initial § 2255 proceeding—the Government has managed to *prevent* judicial review.

Remarkably, the Government has never disputed that it engaged in the claimed misconduct. Not even now.

It does not deny that it omitted exculpatory evidence about an alleged confession from official government reports. That it instructed a witness to avoid

---

[1] Citations to the Government's response shall be designated as "GR." Citations to the previously-filed Application for Certificate of Appealability shall be designated as "COA." Citations to the previously-filed Appendix shall be designated as "A." Citations to documents filed in the district court criminal docket, *United States v. Lee*, No. 4:97-cr-00243 (E.D. Ark.), shall be designated as "Doc. No." Citations to the consecutively-paginated trial transcript shall be designated as "Tr."

Appellate Case: 19-2432     Page: 3     Date Filed: 10/21/2019 Entry ID: 4843985

disclosing that information while on the stand. That it allowed the witness's substantially misleading testimony to stand uncorrected. That it manipulated the witness's written grand jury testimony to erase facts unfavorable to its theory of the case. Or that it repeatedly made fraudulent representations to the trial court and this defendant about its compliance with its *Brady* obligations.

The Government has not denied a single one of these allegations. Nor, for that matter, has it responded to Mr. Lee's detailed analysis about how these *Brady* and *Napue* violations materially changed the outcome of his trial, resulting in his wrongful conviction. COA at 17-37.

Instead, the Government attempts to short-circuit any judicial review of these claims. It has taken the astonishing position that because Mr. Lee did not discover its misconduct until after the initial § 2255 proceeding had concluded, its violations of the Constitution are unreviewable as a matter of law. GR at 16. This is so, says the Government, even if it is reasonably probable that its misconduct changed the outcome of the trial. *Id*.

The Government's position is a logical extension of the district court's erroneous resolution of the claims below. But Mr. Lee need not demonstrate at this stage that the district court was wrong on the merits. The purpose of the COA inquiry is simply to determine the threshold question of whether appellate review should be granted; it is not a merits review of the underlying claims. *See Miller-El*

2

*v. Cockrell*, 537 U.S. 322, 342 (2003) ("The question is the debatability of the underlying constitutional claim, not the resolution of that debate."). For that reason, the standard for obtaining a COA is low. *See Randolph v. Kemna*, 276 F3d 401, 405 n.1 (8th Cir. 2002) (describing COA standard as "modest"). Mr. Lee must only show that "jurists of reason could disagree with the district court's resolution" of the claims, or that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Mr. Lee has met that standard as to all of the issues for which he seeks appellate review. Indeed, given that the Government does not actually contest that it suppressed exculpatory material it was constitutionally obligated to disclose and that it presented false or misleading evidence at trial, the district court's resolution of Mr. Lee's three issues – that the district court improperly denied Mr. Lee's *Brady* and *Napue/Giglio* claims and, in the alternative, improperly denied his motions for relief under Rule 60(b)(3) and Rule 60(d)(3) -- is, at the very least, debatable. This Court should issue a COA and allow a full appeal to consider them.

Appellate Case: 19-2432     Page: 5     Date Filed: 10/21/2019 Entry ID: 4843985

## I.    There is an ongoing debate among jurists of reason about whether a material *Brady* claim requires preauthorization.

There is an unresolved debate among jurists of reason in the Eastern District of Arkansas. On one side, the Honorable J. Leon Holmes has held that all *Brady* claims raised in a second-in-time § 2255 motion are subject to AEDPA's gatekeeping requirement for second or successive motions, regardless of their materiality. On the other, the Honorable D.P. Marshall, Jr. has held that the Eighth Circuit imposes no such requirement on material *Brady* claims.

Given these circumstances, the case for issuing a COA is uncomplicated: Reasonable jurists not only *could* differ on the resolution of this issue, they *have* differed.

The Government tries to avoid this straightforward conclusion by misstating the facts. It claims Judge Marshall "did not address … whether [he] could entertain a habeas petition asserting a *Brady* claim based on material evidence without precertification from the court of appeals." GR at 18. This is categorically false.[2]

---

[2] The Government's response is rife with misrepresentations. Because this is a reply, Mr. Lee focuses here on a few key points relevant to the COA standard. But the misleading representation noted above is indicative of the Government's response as a whole. It not only misstates the law, but also the trial record, *see infra* at n. 9, and even its own representations during the prior § 2255 proceedings. *See infra* at Section III.

4

Not only did Judge Marshall address this issue, he ruled that

preauthorization is not required under Eighth Circuit law if a *Brady* claim is

material:

> In the *Brady* context, though, materiality is the touchstone. If [petitioner's] *Brady* claim is nonmaterial, then he'll have to get preauthorization to file his petition. *Crawford v. Minnesota*, 698 F.3d 1086, 1089-90 (8th Cir. 2012). But if his *Brady* claim is material, then his petition may not be "second or successive" within the meaning of AEDPA. *Ibid.*; *see also United States v. Lopez*, 577 F.3d 1053, 1066-67 (9th Cir. 2009).
>
> On the current record, the Court can't determine whether [petitioner's] *Brady* claim is material and, thus, whether his petition requires preauthorization.

*Carter v. Kelley*, No. 5:16-cv-367-DPM-PSH (E.D. Ark. Apr. 25, 2017) (Order)

(reproduced in Appellant's Appendix at A14.).[3]

The Government dismissively refers to Judge Marshall's decision as a "two-

page, unpublished order." GR at 17. But neither its brevity nor its publication

status matters. For purposes of the COA inquiry, it is clear that jurists of reason—

---

[3] The magistrate judge to whom Judge Marshall remanded the case to conduct that materiality analysis in the first instance saw no ambiguity in his opinion. *See Carter v. Kelley*, No. 5:16-cv-367-DPM-PSH, 2017 WL 4214139, \*5 (E.D. Ark. Aug. 31, 2017) (Findings and Recommendation) ("Judge Marshall could not determine from the record whether Carter's *Brady* claim is material and, *thus, whether the petition at bar requires pre-authorization.* Judge Marshall asked that the record be more fully developed.") (emphasis added). It was only after that analysis was complete that Judge Marshall determined that the relevant *Brady* claim was nonmaterial, and that preauthorization was thus required. *See Carter v. Kelley*, No. 5:16-cv-367-DPM-PSH, 2017 WL 4214084 (E.D. Ark. Sep. 21, 2017) (Order).

Appellate Case: 19-2432     Page: 7     Date Filed: 10/21/2019 Entry ID: 4843985

in the very same judicial district, no less—disagree on whether the law requires preauthorization for material *Brady* claims.

Indeed, the Government concedes that this Court has "expressly left open" whether *Crawford* requires preauthorization for material *Brady* claims. *See* GR at 17. Thus, the debate between Judge Marshall and Judge Holmes remains unresolved. This split in the Eastern District of Arkansas is genuine. This Court should issue a COA to resolve it. *See Ragland v. United States*, 756 F.3d 597, 602 (8th Cir. 2014) (where case law was silent on the legal question at issue, prudent course was to grant COA).

The Government's discussion of other circuits' case law is, at best, a distraction, as it is an argument about how to resolve a question under debate. The only relevant inquiry *at this stage* is whether the underlying issue is "debatable among jurists of reason." That standard has already been met here. Indeed, even the cases the Government cites demonstrate the debatability of the underlying issue.[4]

---

[4] The Government implies that every circuit that has reached the merits of this issue has decided it in its favor. GR at 19. As is explained below, the situation in the Eleventh and Ninth Circuits is decidedly more complex. But regardless, the Government's argument is irrelevant to the inquiry at this stage. As the Supreme Court has repeatedly explained, whether appellate review should be granted "does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337-38. In fact, "a claim can be debatable even though every jurist of reason might agree, *after the COA has been granted and the case received full consideration*, that petitioner will not prevail." *Id*. at 338 (emphasis added).

6

Appellate Case: 19-2432    Page: 8    Date Filed: 10/21/2019 Entry ID: 4843985

For example, the Government concedes (as it must) that the judges on the Eleventh Circuit have voiced disagreement on this issue. *See* GR at 15 n.5 (discussing *Scott v. United States*, 890 F.3d 1239 (11th Cir. 2018)). As the *Scott* panel unanimously noted, it was "convinced" that a prior panel's resolution of this issue was "wrong." *Scott*, 890 F.3d at 1256-57. Although it was compelled by the "prior-panel-precedent rule" to deny relief, the *Scott* panel published a lengthy, well-reasoned opinion articulating why material *Brady* claims do not require preauthorization and why the prior panel's decision should be overturned. *Id.* at 1247-58. The *Scott* opinion constitutes compelling evidence that the underlying issue remains "debatable" among jurists of reason.[5]

As *Scott* correctly noted, *Panetti v. Quarterman*, 551 U.S. 930 (2007), is controlling on the question of when a second-in-time claim is "second or successive," and the relevant debate concerns whether the Supreme Court restricted its analysis in *Panetti* to second-in-time petitions involving only *Ford*

---

[5] So is the fact that the panel both began and concluded its opinion by urging the Eleventh Circuit to rehear the case *en banc* and reconsider its prior panel precedent. *See Scott*, 890 F.3d at 1244, 1259. The Government responds by noting that the defendant's petition for rehearing *en banc* was not granted in that case, *see* GR at 15 n.5, but this misses the point. It is exceedingly rare for a circuit court panel to *sua sponte* urge reconsideration of another panel's prior ruling. The fact that the panel took this extraordinary step is more compelling evidence of the debatability of the underlying issue.

Appellate Case: 19-2432     Page: 9     Date Filed: 10/21/2019 Entry ID: 4843985

claims. *Scott*, 890 F.3d at 1254-58; COA at 39-43.[6] The Government has not

refuted that this issue is debatable. Instead, it takes the position that federal courts

have virtually no ability to address an entire class of meritorious *Brady* claims:

those in which a second-in-time petitioner could demonstrate a reasonable

probability that the outcome of the trial would have been different, but could not

show that the evidence establishes "innocence."[7] Under this approach, the

---

[6] This debate is ongoing within the Ninth Circuit, too. In *United States v. Lopez,* 577 F.3d 1053, 1064 (9th Cir. 2009), a panel held that under *Panetti*, the pre-AEDPA "abuse of the writ" doctrine was the proper framework for determining whether material *Brady* claims should be considered "second or successive," even for post-AEDPA cases. In *Brown v. Muniz*, 889 F.3d 661 (9th Cir. 2018), a different panel concluded *Panetti* is inapplicable and that the proper framework of analysis is not the "abuse of the writ" doctrine, but rather AEDPA's gatekeeping provision under § 2244(b). *Muniz*, 889 F.3d at 673. Although the *Muniz* panel attempted to overcome its "tension" with *Lopez* by claiming it merely answered a question left open by the previous panel, *id.*, the reality is the *Muniz* decision created a panel split in the Ninth Circuit regarding the applicability of the *Panetti* framework in analyzing whether second-in-time material *Brady* claims require preauthorization.

[7] GR at 16 ("[U]nder the plain language of § 2255, a defendant seeking to raise a *Brady* claim in a second-in-time § 2255 motion based on newly discovered evidence may do so, but only if he can demonstrate to the court of appeals that the evidence, if accepted as true, provides compelling proof of his innocence. … It is not enough to show merely that there is a reasonable probability that the evidence would have changed the outcome of the trial, which is the less onerous standard for materiality under *Brady*.").

As *Scott* pointed out, this approach would require petitioners to make the type of choice deemed unacceptable in *Panetti*—file unripe (and, in many cases, meritless) claims in each and every first habeas petition, or wait, and file a "second or successive" *Brady* claim that will not even be considered on the merits unless it proves the petitioner's actual innocence. *Scott*, 890 F.3d 1250. Moreover, entire subsets of potentially meritorious *Brady* claims would be dismissed without

Government would essentially be rewarded for concealing evidence of its misconduct until after the time for filing the initial § 2255 motion had expired. The claims of prisoners subjected to the longest persisting *Brady* violations should not be required to clear markedly higher hurdles simply because those violating *Brady* were, for so long, successful. This approach would create perverse incentives that are fundamentally at odds with the due process concerns at the core of the Supreme Court's *Brady* jurisprudence. These policy implications alone make the district court's resolution of Mr. Lee's claim "debatable" and worthy of a COA. *See* COA at 42.

## II. The Government has effectively conceded that reasonable jurists could disagree whether his *Brady* claims are material.

The lower court's resolution of the merits of Mr. Lee's *Brady* claims regarding the purported confession is as debatable as its decision on procedure. Although the Government asserts in a footnote that Mr. Lee's claims "lack merit for a number of reasons," GR 20 at n.7, it never identifies those reasons. Indeed, Mr. Lee presented a detailed analysis establishing the materiality of the suppressed *Brady* information, *see* COA at 17-37, but the Government did not respond to any

---

consideration due to no fault of the petitioner's, which "might well work a suspension of the writ of habeas corpus." *Id.* at 1251.

9

Appellate Case: 19-2432    Page: 11    Date Filed: 10/21/2019 Entry ID: 4843985

of it.[8] Simply refusing to engage in a debate about the issues, however, does not establish that the issues are not debatable. For the reasons already articulated in Mr. Lee's Application, jurists of reason could disagree with the district court's resolution of the *Brady* claims, and therefore a COA should issue. *Id.*[9]

---

[8] This appears to be a deliberate choice. The Government has put all its eggs in one basket: that the underlying merits are irrelevant because the district court lacked jurisdiction to consider the *Brady* claims. *See* GR at 20 n.7 ("Because the district court correctly denied Lee's motion on the ground that Lee failed to obtain precertification, the merits of Lee's *Brady* claims are not pertinent."). As noted in Section I, however, it is evident that reasonable jurists could disagree with the district court's jurisdictional ruling.

[9] As Mr. Lee demonstrated in his COA Application, both the jury's verdict form and the applicable law regarding co-conspirator testimony demonstrates that the Government could not have convicted Mr. Lee of the Mueller murders solely on the basis of the testimony of Gloria and Cheyne Kehoe. *See* COA at 21-23, 31-33. This is why the "corroborating" testimony of Mr. Wanker was critical, *i.e.*, material. *Id.* at 17-31. Absent that corroboration, the Government's evidence of Mr. Lee's alleged involvement was weak, and it has only gotten weaker over time—especially in light of the exculpatory DNA results. Appendix at A6-A9. The Government does not respond to these arguments. Instead, it resorts to misstatements of the record in an attempt to make its case look stronger. For example, the Government asserts that Mr. Lee returned to Washington state "flush with cash and in possession of property owned by the Muellers. Tr. 2610, 2620-22, 2896, 2900-01, 2916, 3710." GR at 5. But all of the cited transcript pages refer solely to Chevie Kehoe, Mr. Lee's codefendant, not to Mr. Lee. Similarly, the Government claims that "Lee and Kehoe both fled Washington after they learned that law enforcement authorities were asking questions that linked Kehoe with property stolen from the Muellers. Tr. 2794, 2799, 4980." GR at 6. Again, none of the transcript citations say this. While Gloria Kehoe testified that Mr. Lee took a bus to visit his mother and sister in Oklahoma, nowhere in her testimony does she indicate this trip was a direct response to law enforcement action. Tr. 4980.

10

A COA is warranted for another reason: the district court failed to resolve all the issues before it pertaining to this claim. *See* COA at 35-37. As Mr. Lee noted, the significance of the *Brady* evidence was two-fold: it not only would have allowed him to impeach the witness's testimony about Mr. Lee's alleged confession, it might have led the court to exclude the confession altogether. *See* COA at 35. The district court's failure to consider this latter aspect of the *Brady* claim fundamentally altered its prejudice analysis. *See* COA at 35-37. The court only opined about the relative weight the jury might have given the purported confession if the *Brady* material had been disclosed; it did not—as it was required to under *Brady* and its progeny—consider the totality of the evidence as if the purported confession had never been presented to the jury at all. *Id*. at 37.

The caselaw is clear that where an issue has been raised below, but not ruled upon, a COA should issue and the case should be remanded for further proceedings. *See* COA at 8-9, 37, 50-51 (collecting cases). Indeed, courts have long recognized that unaddressed *Brady* claims particularly necessitate summary issuance of a COA and a remand because they are highly fact-dependent. *Id*.

The Government does not refute this authority. In fact, it presents no argument at all for why a COA should not issue under these circumstances. Thus, this Court should summarily issue a COA and remand to the district court for further proceedings.

11

Appellate Case: 19-2432      Page: 13      Date Filed: 10/21/2019 Entry ID: 4843985

**III.** **The Government's consistent failure to produce requested *Brady* materials in its possession constitutes "misrepresentation" and "misconduct" under Rule 60(b)(3).**

The Government does not contest that the Wanker material constituted *Brady* evidence that was in its possession and that it was constitutionally obligated to disclose. Nor does the Government dispute that it concealed this evidence during the entirety of the pre-trial, trial, and post-conviction proceedings. Indeed, the Government did not just fail to disclose this information, it repeatedly made false and misleading representations to the defense—and to the district court—that it had fully complied with its *Brady* obligations. This misconduct extended to the § 2255 proceedings and impeded Mr. Lee's ability to fully and fairly present his case.

**A. Mr. Lee was prevented from fully and fairly litigating his initial § 2255 motion because he reasonably relied on the Government's repeated representations that it had disclosed all *Brady* evidence in its possession.**

The record is clear that Mr. Lee renewed his request for *Brady* evidence as part of his § 2255 motion. *See* Doc. No. 1118-1 at 7 n.3 ("With regard to the Government's constitutional *Brady* obligations, Movant's counsel requests that the Government review its files and the files of its investigating agencies for any information favorable to the defense bearing on guilt or punishment[.]"). The only proper response to this request would have been for the Government to disclose the Wanker material. Instead, it carefully side-stepped the request by replying that a

12

"huge amount of 'discovery' materials were provided" at trial, including "*Brady* material." Doc. No. 1126-1 at 45 n.16.

The Government protests that its response during the § 2255 proceeding has been taken "out of context," GR at 22, yet it never explains what the proper context would be. Indeed, consider the backdrop against which this statement was made: the Government had repeatedly stated on the record throughout the pre-trial and trial proceedings that any and all *Brady* evidence in its possession had been produced. *See* COA at 43-44. Given *this* context, how else was Mr. Lee to understand the Government's representations during the § 2255 proceedings other than as a denial that any additional *Brady* material existed? *See* COA at 52-53 (outlining pattern of Government misconduct leading up to § 2255 proceeding).

This is precisely the type of behavior that is cognizable under Rule 60(b)(3): When an adverse party fails to produce "obviously pertinent requested discovery material in its possession," that suffices to establish "misconduct under the meaning of Rule 60(b)(3)." *Schultz v. Butcher*, 24 F.3de 626, 630-31 (4th Cir. 1994). *See also Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir.1999) ("Failure to disclose information requested during discovery may constitute 'misconduct' under Rule 60(b)(3)."); COA at 52 n.29 (collecting cases).

Appellate Case: 19-2432     Page: 15     Date Filed: 10/21/2019 Entry ID: 4843985

The Government argues that the district court correctly denied the Rule 60(b)(3) motion on the grounds that Mr. Lee failed to allege "that the Government intentionally misrepresented any facts," GR at 21, but that aspect of the court's ruling is not just debatable by jurists of reason, it is a plainly incorrect application of the law. Rule 60(b)(3) does not require that the misrepresentation be intentional. *United States v. One (1) Douglas A-26B Aircraft*, 662 F.3d 1372, 1375 n.6 (11th Cir. 1981) ("Were the term 'misrepresentation' as used in Rule 60(b)(3) interpreted to encompass only false statements made with the intention to deceive, the behavior described by that word would be wholly subsumed within the category of behavior that the same subsection of the rule refers to as 'fraud.'"). Therefore, the absence of intent to deceive does not foreclose relief under Rule 60(b)(3). *See Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988) ("Misconduct" under Rule 60(b)(3) does not require proof of nefarious intent or purpose); *Schultz*, 24 F.3d at 630 (inadvertent as well as intentional failure to comply with a discovery order constitutes misconduct under Rule 60(b)(3)); *Bros Inc. v. W.E. Grace Mfg. Co.*, 351 F.2d 208, 211 (5th Cir. 1965) (relief due to misrepresentation available even in the absence of "a deliberate evil purpose to misstate or conceal or thereafter engage in foot-dragging lest the truth might be uncovered"); *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995) ("Rule 60(b)(3) applies to both intentional and unintentional misrepresentations."); *In re M/V Peacock on*

14

*Complaint of Edwards*, 809 F.2d 1403, 1405 (9th Cir. 1987) (negligent misrepresentations may support relief from judgment under Rule 60(b)(3)).

Moreover, this was no ordinary discovery violation. The Government was under a standing order by the court to provide the requested information, *see* Doc. No. 55, and it had an independent constitutional obligation to disclose the information—which it repeatedly acknowledged was a "continuing" obligation. *See* COA at 43-44. Thus, the Government's "behavior displayed contempt for the discovery and litigation process as well as the Court." *Young v. Act Fast Delivery of West Virginia, Inc.*, No. 5:16-cv-09788, 2019 WL 4859009 at *3 (S.D. W.Va. Oct. 1, 2019) (granting Rule 60(b)(3) relief where litigant failed to produce requested discovery materials).

Reasonable jurists could thus disagree with the district court's ruling that Mr. Lee failed to allege facts cognizable under Rule 60(b)(3). *See Scott v. United States*, No. 3:06-cv-906-J-32PDB, 2016 WL 323902, *3 (M.D. FL Jan. 27, 2016) (granting relief pursuant to Rule 60(b)(3) to reopen § 2255 proceeding where Government unintentionally failed to disclose *Brady* evidence), *rev'd on other grounds*, 890 F.3d 1239, 1258 (11th Cir. 2018) ("On appeal, neither party disputes

15

that the district court was within its power to reopen the [§2255] Motion [under Rule 60(b)(3)]").[10]

The Government claims its misrepresentations had no effect on Mr. Lee's ability to litigate the underlying *Brady* claim at his initial § 2255 proceeding. *See* GR at 21. Stated differently, its position is that Mr. Lee should not have relied on the Government's multiple representations that it had fully complied with its *Brady* obligation. Mr. Lee already anticipated and addressed this argument in his COA Application. *See* COA at 53-56. Numerous courts, including this one, have flatly rejected the notion that "defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed." *Banks v. Dretke*, 540 U.S. 668, 695-96 (2004). Indeed, this Court has long recognized that a habeas petitioner is entitled to rely on the prosecution's representation that all *Brady* materials have been disclosed. *See* COA at 55-56 (collecting cases). The district court's contrary ruling—that the relevant inquiry is whether Mr. Lee could have discovered the *Brady* evidence *in spite* of the Government's misconduct—is thus plainly debatable by jurists of reason.[11]

---

[10] *See also Scott*, No. 3:06-cv-906-J-32PDB (M.D. Fla. Jan. 26, 2015) (Order, at 15-26).

[11] Moreover, the information that the Government suppressed was not otherwise easily discoverable. GR at 20 n.7. In fact, the Government went to great lengths to make sure the Wanker information was not memorialized or otherwise made public, including intentionally omitting it from official government reports and from Mr. Wanker's written grand jury testimony, as well as instructing Mr.

16

**B. The Government's response to the equitable tolling issue establishes the need for a remand.**

The district court denied the Rule 60(b)(3) motion on the grounds that it was untimely. There is a straightforward reason that reasonable jurists could disagree with the district court's conclusion that it lacked authority to extend the deadline— that is, the one-year limit under Rule 60(b)(3) is non-jurisdictional and, therefore, subject to equitable tolling. *See* COA at 46-50. Thus, the district court's resolution of this issue is clearly "debatable" by jurists of reason.

The Government claims that no court has ever tolled the time for filing a Rule 60(b)(3) motion. GR at 23. This is incorrect. *See*, *e.g., Young v. Act Fast Delivery of West Virginia, Inc.*, No. 5:16-cv-09788, 2019 WL 4859009, *3-*4 (S.D. W.Va. Oct. 1, 2019) (granting equitable tolling of Rule 60(b)(3) motion where litigant concealed evidence through false and misleading responses to discovery requests). Indeed, no less an authority than the Supreme Court has indicated that non-jurisdictional filing periods are subject to equitable tolling. *See* COA at 46-47.

---

Wanker not to volunteer the information at Mr. Lee's trial. Even Mr. Wanker himself was not made available to the defense prior to trial. He was a secret witness whose identity was disclosed in the middle of trial less than 48 hours before he took the stand, and during much of that time he was unavailable while he traveled from his home in Spokane, Washington, to the trial in Little Rock, Arkansas. The only discovery materials that the Government provided to the defense at that time were official reports that had been written in such a way as to omit the relevant *Brady* information.

17

The Government cites several cases where district courts refused to equitably toll the one-year period for filing a motion under Rule 60(b). GR at 23. These cases are of no moment. As this Court has explained, equitable tolling is "a fact intensive inquiry that depends on the totality of the circumstances present in a particular case." *Martin v. Fayram*, 849 F.3d 691, 698 (8th Cir. 2017) (citing *Holland v. Florida*, 560 U.S. 631, 649-50 (2010)). The fact that the particular litigant in the cases cited by the Government failed to satisfy that "fact intensive inquiry" does not refute that motions under Rule 60(b) *can* be equitably tolled.

As previously noted, the district court left the issue of equitable tolling unaddressed. That alone warrants issuing a COA because equitable tolling is a highly fact-dependent inquiry, so a remand is necessary in order to allow the district court to make an adequate record and rule on the issue in the first instance. *See* COA at 50-51 (collecting cases). *See also Niccolai v. U.S. Bureau of Prisons, Director*, 4 F.3d 691, 693 (8th Cir. 1993) (remanding where "district court has not addressed the equitable tolling issue"); *Riddle v. Kemna*, 523 F.3d 850, 858 (8th Cir. 2008) ("As this court's cases demonstrate, equitable tolling in general, and diligence in particular, depend on the facts of the case."; remanding for further fact-finding); *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 (3d Cir. 2002) (equitable tolling inquiry is "so fact-specific" that "application of this equitable doctrine is generally committed to the discretion of the trial court in the first

18

instance"); *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) ("grounds for equitable tolling are highly fact-dependent, and because the district court is in a better position to develop the facts and assess their legal significance in the first instance, … the best course is to remand to the district court for appropriate development of the record").

The Government argues—for the first time on appeal—that Mr. Lee "provides no basis to conclude he could satisfy the diligence requirement that would warrant tolling in the first place." GR at 23-24. This argument was waived as it was not raised below. *Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010).

Additionally, whether Mr. Lee was diligent is a fact-intensive inquiry. *See Goldman v. Bequai*, 19 F.3d 666, 669 (D.C. Cir. 1994) (diligence element is "highly fact-bound"; "the relevant question is not whether some ill-defined 'reasonable plaintiff' should have discovered her injury within the limitations period, but whether it was reasonable for a plaintiff in Goldman's situation to have failed to do so."). Because no record has been developed on this issue, a remand is required. *See Burns v. Prudden*, 588 F.3d 1148, 1152 (8th Cir. 2009) ("because diligence is a fact-intensive question, we decline to rule on it in the first instance here"); *Streu v. Dormire*, 557 F.3d 960, 968 (8th Cir. 2009) (remanding because diligence element of equitable tolling inquiry "depends on the facts of the case"); *Shelton v. Purkett*, 563 F.3d 404, 407 (8th Cir. 2009) ("The issue of whether

19

Shelton has been diligently pursuing his rights is a factual issue about which the record is not yet developed, which would normally require remand to the district court.").[12]

### IV. Reasonable jurists could disagree whether the Government's sustained pattern of misconduct establishes "fraud on the court" under Rule 60(d)(3).

The Government's contention that Mr. Lee "does not come close to alleging that the government engaged in deliberate, intentional misconduct directed toward court in the § 2255 proceedings," GR at 24-25, is baffling. Not only has Mr. Lee alleged precisely that, it bears repeating that the Government does not dispute any of the underlying facts that establish its misconduct.

Mr. Lee articulated four grounds that establish that the Government's misconduct is cognizable as "fraud on the court" under Rule 60(d)(3):

---

[12] The Supreme Court has instructed that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' ... not 'maximum feasible diligence.'" *Holland v. Florida*, 560 U.S. 631, 653 (2010) (internal citations omitted). Here, Mr. Lee reasonably relied on the Government's repeated representations that it had disclosed all *Brady* evidence in its possession at the time of trial. Thus, equitable tolling is warranted because, among other reasons, the Government's conduct "lulled the petitioner into inaction." *Curtiss v. Mount Pleasant Corr. Facility*, 338 F.3d 851, 855 (8th Cir. 2003). Indeed, to hold otherwise would essentially reward the Government for its misconduct. *See* COA at 49; *Young*, 2019 WL 4859009 at *3 ("Permitting [litigant who failed to disclose requested discovery materials] to reap the rewards of its own misconduct under these circumstances would send the message that burying damaging evidence pays off, so long as it remains concealed for at least a year after judgment.").

Appellate Case: 19-2432    Page: 22    Date Filed: 10/21/2019 Entry ID: 4843985

(1) The Government's fraudulent representations about its compliance with its *Brady* obligations precluded the district court from properly adjudicating Mr. Lee's request for *Brady* evidence in his § 2255 proceeding, as well as the broad *Brady* claim that Mr. Lee had raised in his § 2255 motion and had indicated he would amend upon the disclosure of any *Brady* evidence.[13]

(2) Concealment of information that is *favorable* to the opposing party constitutes a fraud on the court because it harms the integrity of the adversarial process itself.

(3) The misrepresentations here were made by *officers of the court*.

(4) The fraud here was not the mere failure to comply with a discovery request made during the § 2255 proceeding, but rather the broader pattern of misconduct that spanned *nearly two decades* and that successfully shielded the *Brady* violations from any judicial review.

*See* COA at 56-59. These arguments, supported by case law, establish that the Government's misconduct here was not mere fraud on its opposing party, but rather a "fraud perpetrated by officers of the court so that the judicial machinery [could not] perform in the usual manner its impartial task of adjudging cases that

---

[13] Mr. Lee has been whipsawed by the Government's misrepresentations. Indeed, it is difficult to conceive what more he could have done to preserve his ability to obtain §2255 review of the Government's *Brady* violations. Despite raising a broad *Brady* claim and reserving his right to amend in the event its misconduct was disclosed during the initial § 2255 proceedings, the Government's suppression prevented Mr. Lee from timely amending his motion, rendering his *Brady* claim moot. COA at 44-45. And now that this *Brady* material has finally come to light, the Government argues Mr. Lee's claims are moot for a different reason: because they do not establish innocence. Absent relief under Rule 60(b)(3) or Rule 60(d)(3), Mr. Lee will have no way to remedy the Government's interference with his one meaningful opportunity for postconviction review of his *Brady* claims in his initial § 2255 proceeding.

Appellate Case: 19-2432     Page: 23     Date Filed: 10/21/2019 Entry ID: 4843985

are presented for adjudication." *Kerwit Medical Products, Inc. v. N & H Instruments, Inc.*, 616 F.2d 833, 837 (5th Cir. 1980). *See also* COA at 57-59 (collecting cases).

The Government's contention that Mr. Lee has not supported his allegations with "clear and convincing evidence" amounts to dissembling. GR at 25. The allegations regarding its concealment of the Wanker material are supported by a signed declaration from Mr. Wanker recounting his interactions with the Government. The Government does not deny any of those allegations. Nor does it deny that its repeated representations to the district court about its compliance with its *Brady* obligations were false. On these facts, it is clear not only that the Government committed *Brady* violations, but that it has deliberately concealed its misconduct from the court *for years* in order to prevent it from adjudicating these constitutional violations. At the very least, these uncontested facts demonstrate that the district court's resolution of this issue—that these allegations do not clear the "high bar" for demonstrating fraud on the court—is debatable by jurists of reason.

Appellate Case: 19-2432     Page: 24     Date Filed: 10/21/2019 Entry ID: 4843985

## CONCLUSION

For the foregoing reasons, Mr. Lee respectfully requests that this Court summarily grant a COA on those issues which the district court did not resolve and remand for further proceedings. In the alternative, Mr. Lee requests that this Court grant a COA on the issues raised herein and set a schedule for merits briefing of these claims.

Respectfully submitted,

/s/ Morris H. Moon
Morris H. Moon
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(713) 880-3556
Morris_Moon@fd.org

/s/ George G. Kouros
George G. Kouros
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 821-0855
George_Kouros@fd.org

Counsel for Daniel Lewis Lee

23

# CERTIFICATE OF SERVICE

This will certify that, on today's date, October 21, 2019, Appellant's counsel served this motion upon the United States by filing the document via this Court's ECF system.

/s/ George G. Kouros
George G. Kouros
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 821-0855
George_Kouros@fd.org

Counsel for Daniel Lewis Lee

Appellate Case: 19-2432    Page: 26    Date Filed: 10/21/2019 Entry ID: 4843985